UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

CREIGHTON LONEL GOINS,

    Defendant.
                            /

No. 1:14-CR-00093

Hon. Robert Holmes Bell
United States District Judge

## GOVERNMENT'S SENTENCING MEMORANDUM

    Defendant will be sentenced on October 16, 2014, having pled guilty to one count of wire fraud in violation of 18 U.S.C. § 1343.  Defendant admitted to knowingly devising and executing a scheme to defraud Trinity Health between April 2006 and November 2010 while working as a computer technology manager.  Furthermore, Defendant has stipulated and agreed that he diverted more than $900,000 in technology assets over five years and converted those assets into cash for his own personal use.  (ECF #2, Plea Agreement ¶6.)

    Initially, the parties had no objections to the first draft of the presentence investigation report ("PSR").  Shortly before the final PSR was issued, however, the probation officer learned that Defendant was not truthful during his presentence interview by failing to disclose that he was maintaining cash deposits in a "Rushcard" account.  Rushcards are prepaid VISA cards that can be used as a debit card once money is deposited in the card account (e.g., a direct deposit of paychecks or depositing cash into the account).  Once the money has been "loaded" on to the card, it can be used online or in stores that accept VISA cards.

    Earlier this month, Defendant's wife reported to the probation officer that Defendant began using a Rushcard when they filed for bankruptcy in 2011.  Upon learning of the Rushcard

account, the probation officer requested copies of the monthly account statements. The records produced by Defendant indicate that he was using the Rushcard account as a bank account: his payroll checks were deposited directly into the Rushcard account; he made several large cash deposits into the account; and he was using the account to pay for living expenses as well as travel and entertainment. The following chart summarizes the flow of money into and out of Defendant's undisclosed Rushcard account during the relevant periods:

|             | June 2014  | July 2014  | August 2014 | September 2014 |
|-------------|------------|------------|-------------|----------------|
| Deposits    | $4,948.51  | $3,507.75  | $914.50     | $1,694.33      |
| Withdrawals | $4,887.05  | $3,282.79  | $1,004.87   | $1,695.37      |

(Exhibit 1: Rushcard Monthly Statements.)[1]  By comparison, in July, Defendant provided materially false and misleading information to the probation officer by claiming he had only $21 in his credit union account, and that his monthly income was $2,080 and monthly expenses were $2,800. (PSR ¶104.)

Separately, the FBI learned in September that Defendant liquidated nearly $46,000 in retirement assets from his former employer's retirement plan on June 15, 2014, and transferred all but $3,000 of that cash into a new account that was opened on June 7 in his wife's name. (Exhibit 2: Copy of Check; Exhibit 3: Credit Union Account Statements.)  Defendant failed to disclose to the probation officer that he liquidated his largest asset after he was charged in this case and had agreed to plead guilty to wire fraud and pay restitution in the amount of $921,158. To date, Defendant has failed to provide receipts to the probation officer demonstrating where

---

[1] The government is filing all exhibits to this memorandum under restricted access to protect the account information from disclosure while providing the Court the opportunity to review the pertinent financial records.

the nearly $46,000 in cash was spent in less than one month.  Defendant claims that the money was spent on furniture, paying bills, paying debts, travel, groceries, and clothing purchases and provided a list of estimated expenditures using that cash.  Absent reliable evidence of what happened to that money, it remains possible that Defendant liquidated the account to hide the cash from the Court.  The final PSR assumes that Defendant spent all of the money.

Moreover, the Defendant's failure to disclose the Rushcard account and the liquidation of nearly $46,000 in retirement assets are interrelated.  Had Defendant disclosed the Rushcard account and monthly statements to the probation officer, the officer would have observed that Defendant made $1,700 in cash deposits into the account in June.  Undoubtedly, the probation officer would have inquired about the source of those funds.  If Defendant had been truthful about his financial affairs, the probation officer would have discovered that Defendant had liquidated $45,863.98 in pension assets on June 18 and immediately transferred $1,000 of that cash into his Rushcard account and the balance to the new account on the same day.

In summary, the chronology of the pertinent events relating to the undisclosed assets are as follows:

| Date | Event |
| --- | --- |
| 5/23/2014 | Defendant signs a written Plea Agreement to plead guilty to wire fraud |
| 6/2/2014 | Defendant is charged with wire fraud by Felony Information |
| 6/3/2014 | Defendant's signed Plea Agreement is filed with the Court |
| 6/7/2014 | A new credit union account is opened in Defendant's wife's name |

3

| Date | Event |
|---|---|
| 6/18/2014 | 1. Defendant deposits the $45,863.98 pension check into his credit union account (prior balance of $13.84); immediately withdraws $3,000 from his credit union account; and deposits $1,000 on his Rushcard account; and<br><br>2. Defendant transfers $42,863.98 to the new credit union account (prior balance of $5.00) |
| 6/19/2014 | $9,000 cash withdrawals in two transactions ($1,000 and $8,000) from the new account |
| 6/20/2014 | $3,000 cash withdrawal from the new account |
| 6/21/2014 | $8,000 cash withdrawal and an additional $200 cash withdrawal at an ATM from the new account |
| 6/24/2014 | $8,000 cash withdrawal and an additional $100 cash withdrawal at an ATM from the new account |
| 6/25/2014 | Defendant deposits $300 on his Rushcard account |
| 6/26/2014 | $8,000 cash withdrawal and an additional $100 cash withdrawal at an ATM from the new account |
| 7/3/2014 | $1,000 cash withdrawal from the new account |
| 7/10/2014 | $3,817 cash withdrawal from the new account, which has a remaining balance of $132.40 |
| 7/28/2014 | Defendant submits a financial statement to the probation officer that failed to disclose all asset accounts, balances, and monthly income/expenses. |

(Exhibit 3: Monthly Credit Union Account Statements.)

Thus, the records obtained to date reflect that Defendant either spent nearly $46,000 in less than one month or Defendant is attempting to hide the money from the Court. Additionally, several of the withdrawal transactions are indicative of "structuring" to avoid Currency Transaction Reports, which the credit union is required to file when a customer withdraws more than $10,000 in currency. A CTR would have alerted the government to the movement of the Defendant's cash.

In light of this newly discovered information, the probation officer concluded that Defendant attempted to obstruct or impede justice and has not clearly demonstrated acceptance of responsibility because he failed to disclose his true financial condition and depleted a substantial amount of his assets immediately after he was charged in this case — monies he could have used to pay restitution to the victim or a fine. In light of these facts, and for the following reasons, the government concurs with the probation officer's calculation of the advisory guideline range:

### I. Obstruction or Impeding the Administration of Justice

The Application Notes to USSG § 3C1.1 provide that the two-level enhancement is properly applied when a defendant provides materially false information to a probation officer in connection with the presentence investigation. *See* USSG § 3C1.1, Application Note 4(H). Providing incomplete or misleading information in connection with a presentence investigation that does not amount to a material falsehood is not obstruction. *See* USSG § 3C1.1, Application Note 5(C). "Material" evidence is defined as evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination. *See* USSG § 3C1.1, Application Note 6.

5

The misleading information provided to the probation officer need not be a "'significant impediment' to the investigation" for it to be material. *United States v. Aideyan*, 11 F.3d 74, 76 (6th Cir. 1993). The enhancement applies even if the probation officer discovers the misrepresentation before sentencing. *See United States v. Bruce*, 396 F.3d 697, 712-13 (6th Cir. 2005) (rejecting defendant's "no harm no foul" view of materiality under USSG § 3C1.1), vacated in part on other grounds on rehearing, *United States v. Bruce*, 405 F.3d 1034 (6th Cir. 2005). Withholding information from the probation officer is material "if it could tend to affect the sentencing judge's determination of the appropriate sentence within the guideline range." *See United States v. Miller*, No. 98-6559, 2000 WL 263280 *4 (6th Cir. Mar. 3, 2000) (citing *United States v. Wilson*, 197 F.3d 782, 785 (6th Cir. 1999)).

In this case, Defendant attempted to obstruct or impede the administration of justice at sentencing by failing to disclose all of his assets, attempting to mislead the probation officer concerning his true financial condition, and by disposing of and/or hiding his liquidated pension assets after he was charged in this case to avoid potentially subjecting those assets to restitution or a fine. The false statements and omissions to the probation officer were material to the preparation of the PSR and this Court's determination of the appropriate sentence. The probation officer and this Court rely on the Defendant's representations concerning his assets, liabilities, and monthly cash flow in preparing and evaluating the PSR. This Court specifically relies on the Defendant's financial condition to determine the availability of assets to pay restitution and a fine; whether a fine should be assessed and, if so, at what amount within the advisory guideline range of $10,000 to $1,842,316 that is applicable in this case; determining a monthly installment plan for payment of restitution and any fine; and determining whether interest should be waived on the amounts due. By misleading the probation officer concerning

his true financial condition, Defendant attempted to impede this Court's ability to determine the appropriate sentence in this case.

## II.  Acceptance of Responsibility

A defendant who merely pleads guilty is not entitled to a reduction for acceptance of responsibility as a matter of right.  USSG § 3E1.1, Application Note 3; *United States v. Saenz*, 915 F.2d 1046, 1047 (6th Cir. 1990).  A defendant must "clearly demonstrate[]" acceptance of responsibility for his offense to obtain the benefit of a two-level decrease in the offense level.  The Sentencing Guidelines further provide that:

> Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct.  There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply.

USSG § 3E1.1, Application Note 4.  Defendant bears the burden of proving that his case is "extraordinary."  *See United States v. Angel*, 355 F.3d 462, 477 (6th Cir. 2004).

If this Court finds that Defendant attempted to obstruct or impede the administration of justice by providing materially false or misleading information to the probation officer in connection with the preparation of the presentence investigation report, Defendant has not clearly demonstrated that he has accepted responsibility for the offense and this case does not present an extraordinary situation where Defendant should obtain the benefit of USSG § 3E1.1.  Misleading the probation officer and failing to provide material financial information to allow the Court to properly determine the sentence in a wire fraud case is directly related to the whether he has accepted responsibility for his fraudulent conduct and the financial harm he has inflicted on the victim.

8

For the foregoing reasons, the government has no objections to the final presentence investigation report.  (ECF #14.)

                                              Respectfully submitted,

                                              PATRICK A. MILES, JR.
                                              United States Attorney

Dated:  October 16, 2014                  /s/   Christopher M. O'Connor
                                              CHRISTOPHER M. O'CONNOR
                                              Assistant United States Attorney
                                              United States Attorney's Office
                                              P.O. Box 208
                                              Grand Rapids, Michigan 49501-0208
                                              (616) 456-2404