UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

UNITED STATES OF AMERICA,
    Plaintiff

v.

    Case No. 1:14-CR-93
    Hon. Robert Holmes Bell

CREIGHTON GOINS,
    Defendant

---

| | |
|---|---|
| United States Attorney | Marek & Associates, PLLC. |
| Attn: Christopher O'Connor | Attn: James A. Marek (P71554) |
| P.O. Box 208 | 99 West Apple Avenue #A |
| Grand Rapids, MI 49501 | Muskegon, MI 49440 |

---

### DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM

NOW COMES the Defendant, Creighton L. Goins, by his attorney James A. Marek, and offers this Supplemental Sentencing Memorandum for the Court's consideration for his sentencing on October 23, 2014, at 1:15 p.m. Mr. Creighton Goins moves this Court to impose a sentence at or below the low end of the advisory sentencing guideline range. In support of his requested sentence and this motion, Mr. Creighton Goins states as follows:

### BACKGROUND

Mr. Goins entered a plea of guilty to one count of Wire Fraud, in violation of Title 18, United States Code, Section 1343, pursuant to a written plea agreement. Count One charged Mr. Goins with Wire Fraud by knowingly devising a scheme to defraud and having the intent to defraud in order to obtain property by means of false or fraudulent pretenses, representations or promises, and having done so by wire communication.

Mr. Goins has been free on bond since his date of Arraignment, and no further charges have been levied against Mr. Goins, either in Federal or State Court.

On or about the 17th day of October 2014, the Government filed a Sentencing Memorandum. The Government's Sentencing Memorandum references the Defendant

utilizing a RushCard for the purchase of items and everyday living expenses. This is a correct statement. The Defendant has previously filed bankruptcy and is unable to obtain a proper credit card for use in purchases. As a result, the Defendant secured a RushCard, which has the intended purpose of acting like a credit card/ATM card, but requires the Defendant to deposit funds onto said card.  There is absolutely nothing illegal about this act, nor is there any negative connotation that can be drawn or should be drawn from the use of a RushCard, as thousands of Americans who are unable to obtain regular credit cards, but still want to utilize the credit card machines and concepts, utilize same on a daily basis.  The Defendant has previously provided the probation office with a copy of the applicable RushCard statements for his account.

The Government claims that the Defendant made several large deposits into the RushCard account, but upon review of the records supplied by the Government in their Exhibit 1, the largest deposit onto the RushCard was a payroll deposit on July 1, 2014, of $2,851.75.  This payroll/income earned was fully disclosed to the probation department/Government, and quite frankly, is not "several large deposits".

The Government further claims that the Defendant provided false and misleading information related to his monthly income.  The Government inquired as to what the Defendant's monthly income averaged, and the Defendant reported approximately $2,080.00. The Defendant's monthly income, as evidenced by the payroll deposit, averaged about $2,851.75 for the month of July.  The difference being $771.00.  The Defendant was asked what his average monthly income was.  The Defendant's income in June 2014 was $2,838.51, pursuant to deposit upon the RushCard, the Defendant's income in August 2014, pursuant to deposit upon the RushCard, was $549.50, and in September 2014, shown by deposit onto the RushCard, was $1,409.33. The income average from June 2014, through September 2014, is still less than $2,000.00 average monthly payroll deposit, which is lower than the Defendant originally indicated was an average income.  Where is the material and intentional misrepresentation?

The Government further claims that the Defendant provided false and misleading information in that the Defendant reported approximately $21.00 in his Credit Union account in July 2014 at the time of the probation meeting.  A review of the Credit Union account shows

that the balance was $26.00. How is that a false and misleading statement when it is verifiably accurate?

Furthermore, deposits onto the Rush Card are not a stream of income. Any deposits either came from employment income, loans, gifts or otherwise, and the Defendant's income stream was fully reported by Defendant as income.

The Government further alleges that the Defendant misrepresented his financial position by not disclosing a retirement asset. The Defendant's previous employer, Trinity Health, maintained an exempt retirement account for Defendant. On or about June 15, 2014, a check in the amount of $45,863.98 was sent to Defendant. Defendant deposited that check into his personal account on or about June 18, 2014. Those funds were then withdrawn from Defendant's account and deposited into an account for his wife (pending dissolution in Muskegon County).

The Defendant had deposited and transferred the respective income out of his possession and control, prior to his meeting with the respective probation officer. On or about the week of October 13, 2014, the probation officer and Defendant's counsel had communications regarding the officer's request for additional information related to the RushCard, and retirement asset. The officer was informed that Defendant would attempt to secure documentation to show where the funds went from the retirement account monies. Those documents were provided to the probation officer via email on or about October 14, 2014.

The expenses that were forwarded to the probation department were totaling approximately $29,616.88. This leaves a total sum of $16,247.10, at best, without a specific expense designation. The sums were deposited in June 2014, it is now October 2014. The Defendant is maintaining a family of five, living without a consistent income, and with mounting expenses, over the past four months. The money was spent to maintain the family and Defendant, and furthermore, did not need disclosure as it was already transferred at the time of the interview.

## OBSTRUCTION OF JUSTICE CLAIM

The Government accurately defines USSG 3C1.1, and Application Note 5(c) & 6, as attached thereto.

However, the application of the Statutory cites as argued by the Government is improper.

As set forth above, the Defendant, at the time of his presentence investigation, disclosed his income, disclosed the assets held by him at that time, and provided all that information to the probation officer. The Defendant has expended his retirement asset on daily living expenses, trying to pay down debt prior to going to prison, providing his son with that which was needed for school, providing his wife with what she needs, and generally living off of the retirement asset during the last 4/5 months. It is not obstruction when a Defendant truthfully answers a question posed to him.  The Defendant was not under a restriction from spending money, receiving retirement buyout monies, or otherwise having to allocate funds in certain directions.

Upon request of the probation officer, the Defendant did all that he could do in regards to providing documentation showing where money was spent, and what money was obtained, especially under the tight time constraints in this matter.  Simply because the Government attempts to "conclude" that the Defendant obstructed Justice does not mean that it is true.

In closing, it is important to note that the Defendant's specific responses and disclosures, as well as the probation officers specific inquiries were absent from the Government's analysis. The Government inquired as to what asset the Defendant held at the time of the sentencing investigation, and was told specifically what the Defendant held.

## ACCEPTANCE OF RESPONSIBILITY

The Defendant stands upon his previous Sentencing Memorandum as same pertains to his acceptance of responsibility, and indicates that he, prior to a warrant even being issued, agreed to plead guilty to the charge, accepted the restitution amounts provided to him, assisted the Government by engaging in interviews with agents of the Government, and has to this date, not attempted to hinder the orderly administration of justice and punishment.

The Government attempts to utilize a RushCard argument, and a previously dissipated retirement income argument, to argue that responsibility has not been accepted. However, the government seems to quickly forget the steps the Defendant took to prevent the excessive waste of time and resources in prosecuting this matter, in having truthfully and honestly stated that he conducted the enterprise, and in humbly submitting himself to this Court.

**WHEREFORE**, the Defendant, Creighton L. Goins, respectfully requests that he be sentenced at the lowest end of the sentencing guideline, or below as deemed lawfully appropriate by this Honorable Court.

Dated: October 22, 2014 /s/James A. Marek
James A. Marek
Attorney For Creighton Goins
99 W. Apple Avenue #A
Muskegon, MI 49440
616-617-1023